IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

GARY M. BALL,                                )
                                             )
                    Plaintiff,               )        Civil Case No. 06-124-KI
                                             )
          vs.                                )        OPINION AND ORDER
                                             )
JO ANNE B. BARNHART, Commissioner )
Social Security Administration,              )
                                             )
                    Defendant.               )

          Merrill Schneider
          P. O. Box 16310
          Portland, Oregon  97292-0310

                Attorney for Plaintiff

          Karin J. Immergut
          United States Attorney
          District of Oregon
          Neil J. Evans
          Assistant United States Attorney
          1000 S.W. Third Avenue, Suite 600
          Portland, Oregon  97204

Richard M. Rodriguez
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Gary Ball brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse

the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Ball had severe impairments of degenerative disc disease, obesity, diabetes mellitus, and conductive hearing loss in the left ear. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After considering Ball's testimony, the ALJ concluded that his complaints and alleged functional limitations were not entirely credible.

The ALJ determined that Ball had the residual functional capacity for light exertion; can lift and carry up to 10 pounds frequently and no more than 20 pounds occasionally; can sit for up to 5-6 hours and stand or walk for up to 3-5 hours in an 8-hour workday with normal breaks; cannot climb ropes, ladders, and scaffolding; is capable of no more than occasional bending, balancing, stooping, kneeling, crouching, and crawling; is restricted from work requiring excellent hearing ability; and needs a sit or stand option at 15 minute intervals. Based on testimony from the vocational expert, the ALJ concluded that Ball could not return to his past work but could perform the jobs of telemarketer and order desk sales and, thus, was not disabled under the Act.

## FACTS

Ball, who was 54 at the time of the decision, has a high school education and one year of college studying business administration. He has approximately 20 years of work experience in the sales of manufactured homes. Ball alleges disability since May 15, 2002 due to a back injury, diabetes, obesity, and hearing loss in his left ear.

Ball started having low back pain after a car accident in 1983. He had laminectomy surgery of the L4-5 vertebrae in 1989. Ball reinjured his back in 2002 when he jumped out of his nephew's boat.

Ball testified at the hearing that he can stand for 5-10 minutes at a time. He has to kneel every 10 minutes to keep his back from spasming. Ball cannot sit for more than 10 minutes without needing to get up. He can only walk a block or two. Ball stated that his pain level was at least an 8 out of 10 but if he does any exercise, such as walking a block, the pain is at 10 out of 10. Ball has never taken anything except over-the-counter pain medication such as aspirin,

Page 5 - OPINION AND ORDER

acetametaphin, and ibuprofen, which only drop his pain level from 10 to 8.  Ball spends a lot of time laying on his couch, using 6 pillows to get him into a yoga position that keeps his spine straight and is the most comfortable, thus allowing him to stay in the position for hours at a time.

Ball explained that he goes to the urgent care center if necessary but he does not have a treating doctor because he has no health insurance except for three months beginning in December 2002.  He explained that he did not see a doctor after jumping out of the boat, and has not received more treatment generally, because of the cost.  Even at the limited treatment, Ball states that his family spends $300 or $400 a month on his medical bills.  He is not treating his diabetes because the doctor will not prescribe medication unless he can come in routinely for a blood sugar test and Ball cannot afford it.

Ball used to enjoy the outdoors, camping three times a month and fishing four or five months out of the year.  Now he cannot go unless his son or friend assists him.  Ball went fishing with his son 30 to 40 times in the three years before the hearing.  Ball's son does the casting and reeling for Ball.  It is a 20 foot walk from the car to where they fish.  Ball went hunting for 10 days in 2003 but sat on a stump rather than walking with the hunters.  They brought a mattress for him to sleep on.  Ball's wife or son do nearly all of the chores around the house.  Twice a year, Ball attends his son's concert but Ball has to sit up front so he can leave the room when his back bothers him.

Ball had an MRI of his back in September 2005, after the hearing.  His attorney sent the report to the Appeals Council, which added the report to the record.  In part, the report states two findings which are likely a source of symptoms.  Tr. 179.

**DISCUSSION**

I.      Credibility Determination

Ball contends that the ALJ improperly found that his subjective symptom testimony was

not entirely credible.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to

produce objective medical evidence of the symptom itself, the severity of the symptom, or the

causal relationship between the medically determinable impairment and the symptom.  The

claimant is also not required to show that the impairment could reasonably be expected to cause

the severity of the symptom, but only to show that it could reasonably have caused some degree

of the symptom.  Id. at 1282.  In the second stage of the analysis, the ALJ must assess the

credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

makes specific findings stating clear and convincing reasons for the rejection, including which

testimony is not credible and what facts in the record lead to that conclusion.  Id. at 1284.

The ALJ noted that there was very little medical evidence in the file, no opinion from a

treating doctor in the file, and that Ball's condition had not been bad enough for him to

consistently seek medical attention.  The ALJ noted that Ball resigned from his last job in June of

2001 due to a disagreement with the employer and not because of health problems.  The ALJ

noted that Ball told one doctor that he had back pain only for the last year or so, going back to 2003, and that he had been prescribed nothing stronger than over-the-counter pain medications, despite testifying that his pain is at an 8 out of 10 level. The ALJ also noted the discrepancy between Ball's testimony about his blood sugar levels and the medical record. The ALJ noted the evidence that Ball has gone hunting and fishing since his alleged onset date and that he told Dr. Bindal in July 2004 that he could do computer work but testified at the hearing that he had not done so since May 2002.

Ball argues that he did not receive stronger analgesics and more treatment because he only had medical insurance between December 2002 and February 2003.

I also note that Ball went to Gresham Urgent Care as a private-pay patient, on six occasions from September 8, 2004 through March 21, 2005. Thus, even without insurance, Ball saw a doctor numerous times but did not receive stronger analgesics for his back pain and similarly, did not receive more aggressive treatment during the three months he was insured. I agree with the ALJ that this is inconsistent with Ball's testimony that his pain is constantly ranging from 8 out of 10 to 10 out of 10.

Ball argues that it is unfair for the ALJ to assume that he was exaggerating his blood sugar levels rather than making a mistake, particularly in light of the uncertainty in his testimony on the topic. Ball testified that his blood sugar was 256 to 286 after fasting for 24 hours and had been at that level from December 2004 through March 2005. Later in the hearing, Ball stated: "It was 256 I believe, and that was down from – the first time I checked, it was 300 and something. Then it went down to 280 something, and then it went down to 256 I believe." Tr. 209.

Page 8 - OPINION AND ORDER

A week after the hearing, Ball's attorney wrote the ALJ to tell her that Ball now realizes that the numbers he testified to were incorrect and the urgent care chart notes, with a blood sugar level of 162 on October 16, 2004, are correct.

The size of the discrepancy in the blood sugar levels, as well as Ball's specific rather than general statements, supports the ALJ's conclusion that Ball was exaggerating his blood sugar levels. I do not interpret Ball's statements as having a level of uncertainty which could account for a difference of over 100 units.

Ball contends that the ALJ's reason that the testimony is not consistent with the medical and substantial evidence of record is not convincing. Ball notes that the x-rays and MRI prove that he has severe impairments in his lumbar spine. He also contends that the ALJ mischaracterizes his testimony about naps and ability to work at the computer.

The ALJ did not mischaracterize the testimony about Ball's computer usage. Dr. Bindal stated that Ball could do paperwork and computer work. It appears in the paragraph of the report in which Dr. Bindal repeated what Ball reported to him. But at the hearing, Ball expressly stated that he had not used a computer since May 2002. I also note that the ALJ agrees that Ball has a severe impairment of degenerative disc disease. The impairment alone is not disabling. It is the level of symptoms that is in dispute.

In summary, the ALJ properly rejected Ball's credibility by giving clear and convincing reasons for doing so.

II.   Lay Testimony

Ball contends that the ALJ improperly rejected the written statements provided by Ball's nephew, brother, and wife. Tr 137-40. Ball contends that the lay statements make it clear that he

Page 9 - OPINION AND ORDER

does not have the residual functional capacity the ALJ assigned to him.  Ball further argues that

the statements address the alleged inconsistencies.

The Commissioner contends that because the statements are inconsistent with the medical

evidence, the statements provide neither significant nor probative evidence and thus do not need

to be discussed.

The ALJ's opinion does not discuss these lay statements at all.  The Appeals Council

states:

> To the extent that documentary witnesses, whose statements were not subject to
> cross examination, reported a greater level of dysfunction, their statements did not
> take into account the inconsistencies in the record which were summarized in the
> decision, including the limited treatment sought, that were inconsistent with the
> degree of pain and dysfunction that they reported.  Accordingly, these statements
> are not persuasive for a greater level of dysfunction than assessed in the decision.

Tr. 6.

The ALJ does not have to discuss all evidence but must explain why significant probative

evidence was rejected.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ did

not err by failing to mention a letter from a psychiatrist, even when the psychiatrist's opinion is

contradicted by other doctors, when the psychiatrist gave an after-the-fact diagnosis based on a

review of the medical records; this type of diagnosis is notoriously unreliable).  Lay testimony

about a claimant's symptoms is competent evidence which the ALJ must take into account unless

he gives reasons for the rejection that are germane to each witness.  A medical diagnosis,

however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467

(9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical

evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

Ball's wife explains how Ball reinjured his back in 2002, with the pain getting so bad Ball could not be on his feet. Because they were uninsured, Ball did not go to the doctor. His wife explains that Ball can walk a short distance but never for very long. Ball can only sit for about 15 minutes before he needs to move around. He cannot lift anything. At the store, he leans on the cart to take pressure off his back. At home, Ball spends most of his time lying down and is in constant pain. Activities like going to the store or a friend's house for dinner increases the pain the next day. Ball's wife cooks the meals and does the cleaning and yard work.

Ball's brother stated that Ball is constantly in pain, can hardly get around, and walks all humped over. Ball can only walk for about 10-15 minutes before he has to sit down and rest. The brothers used to be avid hunters but if Ball goes hunting now, he cannot walk around and spends most of the day sitting on a stump. Ball's brother does not think Ball can lift anything heavier than food out of the refrigerator.

Ball's nephew stated that whenever he sees Ball, he is tossing and turning in pain on the couch. Ball has trouble walking and standing, neither of which he can do for very long. Ball's nephew does not think Ball even attempts to lift things anymore. He does not believe that Ball can get into a comfortable position but is in pain no matter what position he is in.

If the ALJ had fully credited the three witness statements, he would have changed the residual functional capacity he assigned to Ball. Thus, the evidence is probative and can only be rejected by stating reasons germane to each witness. To completely ignore all three statements is error.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

It is not clear to me that Ball is disabled, primarily due to the limited level of treatment received versus the severe pain Ball contends that he has. Thus, I will remand the case for further hearing to deal with the witness statements and anything further the ALJ determines is necessary for a decision. Because the ALJ correctly rejected Ball's testimony, there is no need to revisit that issue.

Ball notes that the September 26, 2005 MRI, taken after the hearing before the ALJ, was not part of the record until admitted by the Appeals Council. Ball contends that this MRI strengthens the objective support for his back impairment and comments on how the findings explain the sources of his symptoms.

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits. The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. Id.

The MRI report, TR 179, discusses possible sources of Ball's symptoms. I also ask the ALJ to address this report.

///


///


Page 13 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____4th_____ day of January, 2007.


_/s/ Garr M. King_____
Garr M. King
United States District Judge